**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 31 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FREDERICK J. AMIRAULT,

      Plaintiff-Appellant,

v.

CITY OF ROSWELL, a municipal
corporation of the State of New Mexico,

      Defendant-Appellee.

No. 96-2181
(D.C. No. CIV-95-422-MV)
(New Mexico)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO,** Circuit Judge, **LUCERO,** Circuit Judge, and **McWILLIAMS,**
Senior Circuit Judge.

Despondent because of a failed romance, Frederick J. Amirault ("Amirault"), then

age 40, attempted suicide by pouring gasoline on his jacket and igniting himself. His

suicidal efforts failed, but, at the same time, he did suffer some physical and emotional

injury. Thereafter, Amirault filed the present action in the United States District Court for

the District of New Mexico against the City of Roswell ("City"). The action was based

on the alleged misconduct of certain police officers of the City.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3

Although the complaint is not a part of the record on appeal, it would appear that in his original complaint Amirault asserted three claims for relief against the City, and the City only: a claim based on the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; a civil rights claim based on 42 U.S.C. § 1983; and a third claim based on New Mexico tort law. By an amended complaint, Amirault added a fourth claim based on spoliation of evidence by the City.

The City apparently filed an answer to the complaint, though such is not in the record before us. It is agreed that the City also filed a Rule 12(b)6 motion to dismiss the complaint and a motion for summary judgment under Rule 56, although, again, neither is in the record before us. Various depositions, or parts thereof, together with affidavits and the like, were submitted to the district court in support of, and in opposition to, the City's motions. The district court treated the City's motions as a motion for summary judgment, granting the motion and entering summary judgment in favor of the City. In so doing the district court dismissed "each and every count . . . of Plaintiff's cause . . . in its entirety with prejudice." The district court's detailed memorandum and order is not published in Federal Supplement, but does appear in Westlaw as *Amirault v. City of Roswell,* No. 95-CV-422, 1996 WL 391986 (D.N.M. July 11, 1996). Amirault appeals. We affirm.

The background facts out of which the present controversy arises are not in dispute. The record before us discloses that on June 9, 1993, the police department of the City was informed by Amirault's estranged girlfriend that Amirault might have suicidal

intentions. Police officers employed by the City immediately contacted Amirault's mother, with whom Amirault resided, in an effort to locate him. When the officers went to Amirault's home, they learned from his mother that Amirault was not at home. When asked, Amirault's mother stated that she did not believe her son was suicidal. This contact resulted in an all points bulletin placing Amirault on a "welfare" alert as "threatening suicide." It would appear that sometime after midnight on June 10, 1993, the police again contacted Amirault's place of residence and found that Amirault had not returned to his home. Again, his mother informed the police that she did not believe that her son was suicidal, and that he often stayed away all night.

On June 10, 1993, at about 6:45 a.m., Officer Tracey Laney found Amirault sitting in his car at a city baseball field. Amirault had a gasoline can in the rear seat of his vehicle. Officer Laney observed Amirault writing on a legal pad. Meanwhile backup officers arrived. At that time Amirault told the officers that he had thought of committing suicide but had changed his mind. The officers called headquarters and were advised of the fact that Amirault's estranged girlfriend had called the previous evening and reported him as suicidal and were further advised of the contacts by the police with Amirault's mother on the previous evening.

After further conversation between the officers and Amirault, the officers, believing Amirault was not going to attempt suicide, said he was free to go and Amirault

left.  About an hour later Amirault, after driving to his estranged girlfriend's backyard, poured gasoline on his jacket and struck a match, lighting himself on fire.

In dismissing Amirault's ADA claim, the district court spoke as follows:

> Title II of the ADA generally prohibits a public entity from excluding a qualified individual with a disability from services, programs, or activities of the public entity.  There is no question that the City of Roswell and its police force constitute a public entity under the ADA.  To establish a violation of Title II of the ADA, Plaintiff must prove the following:
>    (1) that he is a qualified individual with a disability;
>    (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and
>    (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.  (footnotes omitted)

*Amirault,* 1996 WL 391986, at *4.

The district court then went on to hold that, assuming Amirault did suffer a mental disability within the meaning of the ADA, he had nonetheless not met the requirements set forth in (2) and (3) of the above quotation.  Specifically, the district court stated that Amirault had not made a sufficient showing that any municipal service or benefit was denied him solely because of any disability.  We are in accord with the district court's reasoning on Amirault's ADA claim.  The record simply does not suggest that the police somehow had a duty to take Amirault into custody and transport him to the City's health

- 4 -

clinic for evaluation and that by failing to do so Amirault was denied access to any

"service, benefit, or program" of the City. In this regard, the district court then went on to

hold that most certainly there was no showing that any possible denial of benefits or

services was because of Amirault's disability. We agree.

The district court dismissed Amirault's civil rights claim, 42 U.S.C. § 1983, and,

on appeal, Amirault does not challenge that dismissal order.

At oral argument, counsel for Amirault indicated that he was primarily concerned

with that part of the district court's order dismissing Amirault's claim based on state tort

law, which he said was the "gravamen" of Amirault's complaint, and not the dismissal of

his ADA claim. In any event, the district court held that the City, under New Mexico law,

was immune from suit.

The starting point on Amirault's state tort claim is that the state is immune from

suit unless the state clearly waives its immunity. N.M. Stat. Ann. § 41-4-4 (1996). N.M.

Stat. Ann. § 41-4-12 (1977), relied on by Amirault, provides as follows:

> The immunity granted pursuant to Subsection A of Section
> 41-4-4 NMSA 1978 does not apply to liability for personal
> injury, bodily injury, wrongful death or property damage
> resulting from assault, battery, false imprisonment, false
> arrest, malicious prosecution, abuse of process, libel, slander,
> defamation of character, violation of property rights or
> deprivation of any rights, privileges or immunities secured by
> the constitution and the laws of the United States or New
> Mexico when caused by law enforcement officers while
> acting within the scope of their duties.

In this regard, the district court held that N.M. Stat. § 41-4-12 was inapplicable because the City "cannot be deemed to have waived immunity . . . for an alleged failure to arrest and/or involuntarily commit Plaintiff." *Amirault,* 1996 WL 391986, at *13. In this connection, the district court stated that "it is clear that immunity is not waived under New Mexico's Tort Claims Act for self-inflicted injury, which is the linchpin of this case." *Id.* We agree. It is hard to see how Amirault's self-inflicted injuries were "caused" by the City. Also, the district court, citing New Mexico cases, rejected the further suggestion by Amirault that the police officers were "health care providers" and, as such, liable under N.M. Stat. Ann. § 41-4-10 (1978). We agree with the district court's reasoning and we are not inclined to disturb its understanding of local New Mexico law.

Since the City is immune from suit for the self-inflicted injuries sustained by Amirault, it follows that it is also immune from suit for spoliation of evidence.[1]

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge

---

[1]This claim was based on the fact that the City was unable to produce tapes of certain communications between its police officers and headquarters regarding the case.